IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02265-WYD-BNB

JOSEPH A. ELLSWORTH,

Plaintiff,

v.

PAT MONTEZ,
CHARLES OLIN,
A. ZAVARAS,
CATHY HOLST,
MARSHALL GRIFFITH,
PAULA FRANKTZ, and
BURL MCCULLAR,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the following motions:

1.  Plaintiff's **Motion that Summary Judgement Judgment** [sic] **Against Plaintiff**

**be Denied and Case be Allowed to Proceed to Trial or Alternately Summery**

[sic] **Judgement for Plaintiff be Granted** [Doc. #86, filed 08/08/2011] (the "Plaintiff's

Motion"); and

2.  Defendants' **Motion for Summary Judgment** [Doc #89, filed 08/12/2011] (the

"Defendants' Motion").

I respectfully RECOMMEND that the Defendants' Motion [Doc. # 89] be GRANTED

and the Plaintiff's Motion [Doc. # 86] be DENIED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at

324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. BACKGROUND

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the Colorado Territorial Correctional Facility. He filed his Amended Complaint on October 1, 2009 [Doc. #5] (the "Complaint"). The Complaint asserts four claims. Claims One, Two, and Four have been dismissed entirely, and Claim Three has been dismissed insofar as it alleges a violation of the plaintiff's Fifth Amendment guarantee against self-incrimination [Docs. #7 and #81].

Claim Three is extant insofar as it alleges that defendants Montez, Olin, McCullar, and Zavaras refused to remove a sexual assault conviction from the plaintiff's prison record. Specifically, Claim Three alleges that the DOC "lists" the plaintiff as having been convicted of a charge of "sexual assault on a child," but the plaintiff has never been charged or convicted of sexual assault on a child in any jurisdiction. *Complaint*, p. 13. Claim Three also alleges that the defendants are wrongfully requiring the plaintiff to participate in sex offender treatment and that he is "being denied earned credit, community corrections, parole and other benefits" because of his classification as a sex offender.[1] *Complaint*, pp. 13-15. Although the Complaint does not

---

[1] In his briefs, the plaintiff states that the defendants fabricated a "warrant or detainer" which has resulted in denial of release from prison. *Plaintiff's Motion*, ¶ 6; *Response to Defendants' Motion for Summary Judgment* [Doc. #92], ¶¶ 1-3, 8, 10-13. This claim is not asserted in the Complaint. Indeed, the Complaint was filed on October 1, 2009, and the plaintiff did not file a grievance regarding the release issue until June 17, 2011. *Plaintiff's Motion*, p. 15. I will not address claims raised for the first time in a brief opposing a dispositive motion. Moreover, the plaintiff's claim is not supported by any evidence.

identify the basis for Claim Three, the court has construed it as a claim for violation of the plaintiff's due process rights [Docs. #69 and #81].

The plaintiff seeks monetary and injunctive relief. Id. at p. 18.

### III.  UNDISPUTED MATERIAL FACTS[2]

1.  All inmates entering the DOC are given a sex offender classification rating that is used by the DOC to assess their treatment and rehabilitation needs. The sex offender classifications are set forth by DOC Administrative Regulation ("AR") 700-19, which rates inmates on a five-level sexual violence scale:

    a.  S-5: Any judicial determination of a sex offense;

    b.  S-4: Any administrative determination of a sex offense;

    c.  S-3: Any institutional determination of sex offense behavior to include facility disciplinary convictions;

    d.  S-2: Unadjudicated sex abuse allegation; and

    e.  S-1: No arrests or reports indicating sex offense behavior.

*Defendants' Motion*, Ex. A-1, ¶ 6 and Attachment 1, pp. 2-3, subsection (IV)(A);. *Response to Summary Judgment* [Doc. #93] ("Defendants' Response"), Ex. A-3, pp. 2-3, subsection (IV)(A).[3]

2.  In addition, the DOC applies a variety of qualifiers, or subcodes, to inmates' sex offender classifications. These subcodes provide DOC staff with additional information

---

[2]The plaintiff does not provide any evidence to dispute the defendants' statement of facts. Although he sets forth facts in his own motion, the facts are not material to his due process claim.

[3]Attachment 1 to Defendants' Motion is an incomplete copy of AR 700-19. Ex. A-3 of the Defendants' Response contains the entire copy of AR 700-19.

concerning the inmate's sex offender classification, such as the inmate's status with regard to participation in the Sex Offender Treatment and Monitoring Program ("SOTMP"). Id. at Ex. A-1, ¶ 9.

3. An S-5 sex offender classification is given to inmates who have been convicted of a sex offense in a criminal case, irrespective of the jurisdiction where the conviction for the sex offense occurred. Id. at ¶ 7. Inmates who receive this classification are recommended for treatment in the SOTMP. Id. at ¶ 8.

4. According to the DOC's records, the plaintiff was received by the DOC on November 25, 2008, to serve Colorado sentences for the crimes of Perjury and Forgery. Id. at ¶ 10. He was classified as an S-5 sex offender due to his convictions for "Attempted Lewd Molestation of a Child," "Attempt to Distribute or Exhibit Obscene Material," and "Attempting Lewd Proposals to a Child" in Case No. CF-99-3354, Tulsa County, Oklahoma. Id. at ¶ 11 and Attachment 2.

5. The police reports for these offenses (to which the plaintiff pled guilty) indicate that the charges arose out of incidents in which the plaintiff engaged in conversations of a sexual nature with an undercover police officer posing as a 14 year-old girl. Id. at ¶ 12 and Attachment 3. The plaintiff made an agreement online to meet with the undercover officer, who he believed to be a 14 year-old girl, for a sexual encounter, and traveled from Denver, Colorado, to Tulsa, Oklahoma, for this purpose. He was arrested in Oklahoma at a pre-arranged meeting place with the undercover officer. Id. at ¶ 13 and Attachment 3.

6. According to the police reports, the plaintiff's car was searched and found to contain alcoholic beverages and wine coolers, which the plaintiff had indicated he would provide to the undercover officer in their online communications. The car also contained documents that

appeared to include the online screen names of other individuals who were believed to be as young as 8 years old. Id. at ¶ 14 and Attachment 3.

      7. In addition, the police reports indicate that the plaintiff was found in possession of a key to a motel room. A search warrant was issued, and the search revealed that the hotel room rented by the plaintiff contained a number of contraceptive devices, pornography, a camera, and sexual lubricant. Id. at ¶ 15.

      8. The DOC's records show that an Admission Data Summary was prepared for the plaintiff by non-SOTMP staff at the Denver Reception and Diagnostic Center in December of 2008. Id. at ¶ 16 and Attachment 4. The Admission Data Summary form inaccurately states that the plaintiff has three convictions for sexual assault on a child in Oklahoma and a conviction for sexual assault on a child in the federal courts. Id. at ¶¶ 17, 18 and Attachment 4.

      9. The inaccuracies contained in the Admission Data Summary do not impact the plaintiff's sex offender classification because the DOC confirmed that the plaintiff pled guilty to the offenses of "Attempted Lewd Molestation of a Child," "Attempt to Distribute or Exhibit Obscene Material," and "Attempting Lewd Proposals to a Child" in Case No. CF-99-3354, Tulsa County, Oklahoma, based on the incidents described in the related police reports. Id. at ¶¶ 18, 19. The inaccuracies also have no bearing on the plaintiff's eligibility for earned time credit, on his eligibility for parole, or on his community corrections placement. Id. at ¶ 22.

## IV. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The defendants assert that they are entitled to qualified immunity on the plaintiff's claims. In this regard:

> Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. It is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability.

Ahmad v. Furlong, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).

"When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity." Id. This two-part burden is a heavy one, and it must be met before the defendant bears his initial burden on summary judgment:

> A summary judgment decision involving the defense of qualified immunity is reviewed "somewhat differently" from other summary judgment rulings. When a defendant raises the issue of qualified immunity, the plaintiff must satisfy a two-part test. First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue. A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains. Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.

Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted).

The Due Process Clause of the Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997). The deprivation of a liberty interest can occur procedurally or substantively. County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) (stating that "[t]he touchstone of due process is protection of the individual against arbitrary action of government whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective") (internal quotations and citations omitted).

The Due Process Clause prohibits the government from depriving a person of life, liberty, or property without prior notice and an opportunity for a hearing. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542 (1985). "To invoke the protections of procedural due process, a plaintiff must establish the existence of a recognized property or liberty interest." Setliff v. Memorial Hosp. of Sheridan County, 850 F.2d 1384, 1394 (10th Cir. 1988) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972)).

In the context of a sex offender classification, the courts have found a liberty interest where labeling a prisoner as a sex offender *is coupled with* the "coercive element" of conditioning parole eligibility or receipt of good time credits on completion of a sex offender treatment program. Beierle v. Zavares, 215 F.3d 1336, 2000 WL 757725, *4 (10th Cir. June 12,

2000); Chambers, 205 F.3d at 1242 (stating that the DOC had not created a liberty interest in the plaintiff's *not* being classified as a sex offender; the liberty interest was implicated when the DOC removed the plaintiff's earned time credits).  See also Gwinn v. Awmiller, 354 F3d 1211, 1216 (10th Cir. 2004) (stating that damage to an inmate's reputation by labeling him as a sex offender, without more, is not sufficient to implicate the Due Process Clause).

The process required to classify a prisoner as a sex offender has been described as follows:

> An inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process.  Prison officials need do no more than notify such inmate that he has been classified as a sex offender because of his prior conviction for a sex crime.

Neal v. Shimoda, 131 F.3d 818, 831 (9th Cir. 1997) (cited with approval in Chambers, 205 F.3d at 1243).

By contrast:

> [A]n inmate who has not previously been convicted of a sex offense may be classified as a sex offender for purposes of a prison treatment program only if the prison affords him the procedural protections . . . set forth in [Wolff v. McDonnell 418 U.S. 539 (1974)]: notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. . . . Additionally, in order to comport with due process, there must be some evidence to support the hearing panel's decision . . . and the decisionmaker must be impartial.

Gwinn, 354 F.3d at 1218-19.

Here, it is undisputed that the plaintiff was classified as an S5 sex offender because he was convicted of "Attempted Lewd Molestation of a Child," "Attempt to Distribute or Exhibit

Obscene Material," and "Attempting Lewd Proposals to a Child" in Case No. CF-99-3354, Tulsa County, Oklahoma. Therefore, the plaintiff has received all of the process to which he is due, and he has not been wrongfully recommended for sex offender treatment in the SOTMP. In addition, it is undisputed that the inaccurate description of the sex crimes contained in the plaintiff's Admission Data Summary does not impact his eligibility for earned time credit, parole, or community corrections placement.

The plaintiff argues that he has been wrongfully classified as an S5 sex offender because his convictions were for "attempted" actions, and he did not actually have sexual contact with a child. *Response to Defendants' Motion for Summary Judgment* [Doc. #92], ¶ 9; *Plaintiff's Motion*, ¶ 4; *Complaint* p. 14. The plaintiff does not provide any legal authority to support his argument, and his attempt to characterize his convictions as anything other than sex crimes is unpersuasive.

Under Colorado law, the definition of a "sex offender" includes any person who is "[c]onvicted in the state of Colorado on or after January 1, 1994, of any criminal offense, if such person has previously been convicted of a sex offense as described in subsection (3) of this section in the state of Colorado, *or if such person has previously been convicted in any other jurisdiction of any offense that would constitute a sex offense as defined in subsection* (3) of this section, or if such person has a history of any sex offenses as defined in subsection (3) of this section . . . ." Section 16-11.7-102(2)(a)(II), C.R.S. (emphasis added). Section 6-11.7-102(3) defines "sex offense" as any felony or misdemeanor offense including Enticement of Child in violation of section 18-3-305; Internet Luring of a Child in violation of section 18-3-306; and

Internet Sexual Exploitation of a Child in violation of section 18-3-405.4. Section 16-11.7-102(3)(g), (w) and (v), C.R.S.

The plaintiff was convicted under 21 Ok.St.Ann. § 1123, *Defendants' Motion*, Attachment 2, pp. 15, 20, 25, which is titled "Lewd or Indecent Proposals or Acts as to Child under 16 or Person Believed to Be under 16--Sexual Battery." This statute provides that "[i]t is a felony for any person to knowingly and intentionally . . . [m]ake any oral, written or electronically or computer-generated lewd or indecent proposal to any child under sixteen (16) years of age, or other individual the person believes to be a child under sixteen (16) years of age, for the child to have unlawful sexual relations or sexual intercourse with any person" or to "[a]sk invite, entice, or persuade any child under sixteen (16) years of age, or other individual the person believes to be a child under sixteen (16) years of age, to go alone with any person to a secluded, remote, or secret place, with the unlawful and willful intent and purpose then and there to commit any crime against public decency and morality, as defined by law, with the child." 21 Okl.St.Ann. § 1123(A)(1) and (3).

SOTMP staff determined that the plaintiff's Oklahoma convictions for "Attempted Lewd Proposals to a Child" and "Attempted Lewd Molestation" were equivalent to section 18-3-405.4, C.R.S., "Internet Sexual Exploitation of a Child"; section 18-3-305, C.R.S., "Enticement of a Child"'; and section 18-3-306, C.R.S., "Internet Luring of a Child." *Reply to Response to Motion for Summary Judgment* [Doc. #94], p. 6; *Plaintiff's Motion*, second consecutive attachment, Answer to Interrogatory No. 6.

Section 18-3-405.4, C.R.S., Internet Sexual Exploitation of a Child, provides:

> An actor commits internet sexual exploitation of a child if the actor knowingly importunes, invites, or entices through communication

> via a computer network or system, telephone network, or data
> network or by a text message or instant message, a person whom
> the actor knows or believes to be under fifteen years of age and at
> least four years younger than the actor, to:
>
>> (a) Expose or touch the person's own or another
>> person's intimate parts while communicating with
>> the actor via a computer network or system,
>> telephone network, or data network or by a text
>> message or instant message; or
>>
>> (b) Observe the actor's intimate parts via a computer
>> network or system, telephone network, or data
>> network or by a text message or instant message.

Section 18-3-405.4(1)(a) and (b), C.R.S.

Section 18-3-305, C.R.S., "Enticement of a Child," provides that "[a] person commits the crime of enticement of a child if he or she invites or persuades, or attempts to invite or persuade, a child under the age of fifteen years to enter any vehicle, building, room, or secluded place with the intent to commit sexual assault or unlawful sexual contact upon said child." C.R.S. § 18-3-305(1). The crime of Enticement of a Child is complete if the defendant acted with the intent to cause a sexual assault on a child even though he was unable to complete it. People v. Black, 759 P.2d 746 (Colo.App.1988). Pursuant to section 18-2-101, C.R.S., "Criminal attempt" is defined as follows:

> A person commits criminal attempt if, acting with the kind of
> culpability otherwise required for commission of an offense, he
> engages in conduct constituting a substantial step toward the
> commission of the offense. A substantial step is any conduct,
> whether act, omission, or possession, which is strongly
> corroborative of the firmness of the actor's purpose to complete the
> commission of the offense. *Factual or legal impossibility of
> committing the offense is not a defense if the offense could have
> been committed had the attendant circumstances been as the actor
> believed them to be, nor is it a defense that the crime attempted
> was actually perpetrated by the accused*.

Section 18-2-101(1), C.R.S. (emphasis added).

Section 18-3-306, C.R.S., defines Internet Luring of a Child as follows:

> An actor commits internet luring of a child if the actor knowingly communicates over a computer or computer network, telephone network, or data network or by a text message or instant message to a person who the actor knows or believes to be under fifteen years of age and, in that communication or in any subsequent communication by computer, computer network, telephone network, data network, text message, or instant message, describes explicit sexual conduct as defined in section 18-6-403(2)(e), and, in connection with that description, makes a statement persuading or inviting the person to meet the actor for any purpose, and the actor is more than four years older than the person or than the age the actor believes the person to be.
>
> It shall not be a defense to this section that a meeting did not occur.

Section 18-3-306(1) and (2), C.R.S.

The plaintiff has not provided any argument or evidence to create a material fact dispute (nor has he met his burden to overcome the defense of qualified immunity) regarding whether the Oklahoma convictions constitute sex offenses as defined in section 16-11.7-102(3), C.R.S., thereby requiring that he be labeled as an S5 sex offender and undergo sex offender treatment. Accordingly, the Defendants' Motion should be granted; the Plaintiff's Motion should be denied, and summary judgment should enter in favor of the defendants on the plaintiff's remaining claim.

## V. CONCLUSION

I respectfully RECOMMEND:

1. Defendants' Motion [Doc. # 89] be GRANTED, and the defendants be awarded summary judgment in their favor and against the plaintiff on the single remaining claim; and

2. Plaintiff's Motion [Doc. # 86] be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated October 3, 2011.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge